People v Mitchell (2019 NY Slip Op 00371)





People v Mitchell


2019 NY Slip Op 00371


Decided on January 22, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on January 22, 2019

Sweeny, J.P., Gische, Tom, Mazzarelli, Kern, JJ.


7450 1108/15

[*1]The People of the State of New York, Respondent,
v
Levi Mitchell, Defendant-Appellant.


Seymour W. James, Jr., The Legal Aid Society, New York (David Crow of counsel), and Patterson Belknap Webb & Tyler LLP, New York (Kathrina Szymborski of counsel), for appellant.
Cyrus R. Vance, Jr., District Attorney, New York (Ahmed Almudallal of counsel), for respondent.



Judgment, Supreme Court, New York County (Anthony Ferrara, J.), rendered November 30, 2015, convicting defendant, after a jury trial, of criminal possession of a forged instrument in the first degree, and sentencing him, as a second felony offender, to a term of 4 to 8 years, modified, as a matter of discretion in the interest of justice, to the extent of reducing the sentence to 3 to 6 years, and otherwise affirmed.
Defendant, a homeless 53 year-old, entered a pharmacy and attempted to pay for a tube of toothpaste using a counterfeit $20 bill. The bill was rejected by the cashier, and defendant left the store without completing the transaction. Shortly thereafter, defendant was observed by the police, where he was attempting to purchase food with a counterfeit $20 bill. The restaurant cashier refused to accept the bill. Defendant was stopped by the police in front of yet another fast-food restaurant. Five counterfeit $20 bills were recovered from him upon arrest.
Despite being charged with five counts of possession of a forged instrument, the jury only convicted him of a single count and acquitted him of the remaining charges. Defendant was sentenced to an indeterminate period of incarceration of 4 to 8 years. We reduce this sentence, in the interest of justice, to an indeterminate period of incarceration of 3 to 6 years.
The Appellate Division has "broad plenary power to modify a sentence that is unduly harsh or severe under the circumstances, even though the sentence may be within the permissible statutory range" (People v Delgado, 80 NY2d 781, 783 [1992]). A trial court need not abuse its discretion for the Appellate Division to substitute its own discretion (People v Edwards, 37 AD3d 289, 290 [1st Dept 2007], lv denied 9 NY3d 843 [2007]). We may "reduce a sentence in the interests of justice, taking into account factors such as defendant's age, physical and mental health, and remorse" (People v Walsh, 101 AD3d 614 [1st Dept 2012]; see People v Ehrlich, 176 AD2d 203 [1st Dept 1991]).
The immediate object of defendant's crime was to purchase basic human necessities, including food and toothpaste. In consideration of the fact that he was a 53 year-old, unemployed homeless man, with longstanding medical and substance abuse issues, a reduction of his sentence to 3 to 6 years is appropriate.
Defendant's extensive criminal history does not preclude a determination that his sentence is excessive (Walsh, 101 AD3d at 614). Defendant's most recent felony, forming the basis for his predicate felony adjudication, occurred 9 years prior to the instant offense, and was nonviolent. His most recent violent felony convictions occurred in 1991 and 1995, 20 and 24 years, respectively before the instant offense. The reduced sentence, which is the minimum permissible legal sentence, reflects an enhancement for the predicate nonviolent felony. His more recent convictions have all been nonviolent misdemeanors, and they are mostly related to his longtime drug addiction. Notwithstanding the People's contention that defendant's sentence [*2]is justified, in part, because he was involved in a scheme to launder money, there was no evidence presented at trial to that effect. In fact, the jury acquitted the defendant of the majority of counts regarding forged instruments, and defendant's sentence should not in any way be based on crimes for which he was acquitted (People v Grant, 191 AD2d 297 [1st Dept 1993], lv denied 82 NY2d 719 [1993]).
All concur except Tom, J. who dissents in a memorandum as follows:




TOM, J. (dissenting)


Defendant was convicted, after a jury trial, of criminal possession of a forged instrument in the first degree, and sentenced, as a second felony offender, to a prison term of 4 to 8 years. In light of defendant's long criminal history, his receipt of a sentence on the low end of the sentencing range, and the lack of extraordinary mitigating circumstances, I disagree with the majority's decision to reduce the sentence to 3 to 6 years. Accordingly, I respectfully dissent.
On March 18, 2015, defendant was arrested while attempting to use counterfeit currency to make purchases in two different stores. The police recovered five counterfeit $20 bills from his pocket. On March 30, 2015, defendant was charged with five counts of criminal possession of a forged instrument in the first degree.
Following the jury trial, defendant was convicted of first-degree criminal possession of a forged instrument, a Class C felony. As a second felony offender convicted of a Class C felony, defendant faced a minimum sentence of 3 to 6 years, and a maximum of 7½ to 15 years (see Penal Law §§ 70.06 [3][c], [4][b]). Further, since this was defendant's sixth felony conviction, the trial court, in its discretion, could have sentenced him as a persistent felony offender, and he would have been faced with a minimum indeterminate term of 15 years to life (Penal Law § 70.10[2]; CPL 400.20[1]).
Notably, although defendant was only convicted of a single count of first-degree possession of a forged instrument, the underlying facts include that the police recovered five counterfeit $20 bills from his pocket. This indicates that defendant was actively engaged in a counterfeiting scheme in which he sought to obtain genuine currency as change for small dollar transactions. In other words, he was not merely using a single counterfeit bill to purchase "human necessities" as the majority characterizes it. Rather, it appears he was part of a counterfeiting scheme to change counterfeit bills for real currency.
Significantly, leading back to 1981 defendant has at least 30 prior criminal convictions, including 5 felonies and 25 misdemeanors. Most of these prior convictions are recent. Specifically, since defendant's 2006 conviction of attempted robbery in the third degree, he has been convicted of 21 separate misdemeanors, including a conviction just one month before his arrest in this case. Those 21 misdemeanors include 12 convictions for petit larceny, and also convictions for menacing, criminal possession of a weapon, attempted petit larceny, and drug possession.
In addition, defendant's criminal history includes serious felony convictions for attempted rape in the first degree, attempted robbery in the first degree, attempted criminal possession of a weapon in the third degree, and grand larceny in the third degree.
Moreover, defendant has a history of violating parole, failing to register under SORA, having orders of protection issued against him, having bench warrants issued for his arrest, and he even has criminal convictions from South Carolina.
At sentencing, the People recommended a sentence of 5 to 10 years based on defendant's criminal history, the seriousness of the crime, and the fact that defendant had many opportunities to stay out of trouble over the years but failed to do so. The court heard from defense counsel about defendant's age and medical issues with his knee and shoulder, and it was reminded that this was a nonviolent offense and that defendant had made all court appearances in this case. Taking all this into consideration, the Court issued a sentence of 4 to 8 years, a sentence that was between what the People recommended and the minimum of 3 to 6 requested by defendant. The court's sentence was fair and proper considering all the relevant factors in this case including defendant's extensive criminal history.
There is nothing in the record to warrant a reduction in sentence. While this Court has [*3]plenary power to modify a sentence which is unduly harsh (see People v Delgado, 80 NY2d 780, 783 [1992]), it has nonetheless recognized that the sentencing judge is in the "most advantageous position to determine the proper sentence" (People v Junco, 43 AD2d 266, 268 [1st Dept 1974], affd 35 NY2d 419 [1974], cert denied 421 US 951 [1975]). And, although the majority notes we may reduce a sentence that is within the permissible statutory range (see People v Delgado, 80 NY2d at 783), "our intrusion into [that] discretionary area ... should rarely be exercised" (People v Sheppard, 273 AD2d 498, 500 [3d Dept 2000], lv denied 95 NY2d 908 [2000]). In general, the imposition of a sentence rests "within the sound discretion of the trial court" and "should not be reduced on appeal unless there was a clear abuse of discretion" (People v Junco, 43 AD2d at 268), or unless a defendant has demonstrated "extraordinary" or "special" circumstances warranting such relief (see People v Fair, 33 AD3d 558, 558 [1st Dept 2006], lv denied 8 NY3d 945 [2007]; People v Chambers, 123 AD2d 270, 270 [1st Dept 1986]). Defendant has not demonstrated any circumstances — extraordinary or otherwise — that would justify reducing his sentence on appeal.
The sentencing minutes demonstrate that the court heard the parties' positions, considered various factors, including defendant's significant criminal history, and issued a reasonable sentence given the circumstances. In sum, it is clear the sentencing court did not abuse its discretion in this case and that all the factors, such as defendant's age, physical and mental health and remorse were taken into account by the sentencing court. The majority's sentence reduction under the circumstances sends a wrong and confusing message to our trial courts, which have been following our precedential guidelines.
Defendant is not entitled to a sentence reduction because his crime was nonviolent. Indeed, that fact has been taken into account by the relevant statutory provisions; a Class C violent felony carries a minimum sentence of 5 years.
Nor do defendant's age, homelessness, underemployment or physical health issues warrant a reduction. These circumstances do not excuse defendant's criminal conduct. There is no evidence that defendant's crime was connected to a drug or other addiction, and his presentencing report is unclear regarding any substance abuse issues defendant may have been experiencing at the time of his arrest.
Further, defendant's criminal history establishes that, contrary to his claim, he is not making strides towards rehabilitation or trending away from criminality. In fact, he denied guilt for this crime in his interview with the Department of Probation, and he has failed to take any responsibility for his actions. The majority appears to give less consideration to our sentencing criteria including criminal history, the lack of remorse and responsibility, and instead focuses primarily on sympathy, not the appropriate factors.
Contrary to the majority's implication, there is nothing in the record to suggest that defendant's sentence was based on crimes for which he was acquitted. Nor do I suggest his sentence should be based on those charged crimes. Rather, the court properly sentenced defendant based on the crime he committed, his serious criminal history with at least 30 criminal convictions most of which were recent, and his failure to take responsibility for his actions, among other factors.
Moreover, defendant's sentence was clearly not "unduly harsh or severe," which is the standard, as urged by the majority, for this Court to exercise its broad plenary power to reduce a sentence. Here, defendant faced a maximum sentence of 7½ to 15 years. He received a sentence well within that range and much closer to the minimum permissible sentence. Since this was defendant's sixth felony conviction, he could have received sentence of 15 to life had he been adjudicated a persistent felony offender. Here, his sentence range of 4 to 8 years was one year above the minimum permissible legal sentence for this crime. This is not the type of case where we should exercise our discretionary power to reduce a sentence that was proper and fair.
In sum, "rather than being extraordinary, the circumstances relied on by the majority to support the reduction in sentence are, tragically, all too ordinary: an individual suffers personal [*4]and financial reverses, begins to abuse drugs and/or alcohol either before or after these reverses and ends up facing significant jail time as a result of his commission of various crimes" (People v Walsh, 101 AD3d 614, 616 [1st Dept 2012][Sweeny, J. dissenting]).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JANUARY 22, 2019
CLERK